UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CINDY ENGLISH, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs*. | ) | 1:12-cv-00765-JMS-DKL |
| | ) | |
| GENERAL ELECTRIC COMPANY, | ) | |
|     *Defendant*. | ) | |

## **ORDER**[1]

Plaintiff Cindy English brought the instant suit against her employer Defendant General Electric Company ("GE") under the Americans with Disability Act ("ADA"). Presently pending before the Court is GE's Motion for Summary Judgment. [Filing No. 33.] For the reasons that follow, the Court **DENIES** the motion.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that

---

[1] As part of the Court's pilot program regarding hyperlinking in Court filings, this Order contains hyperlinks to documents previously filed in this case, and to legal authority. Instead of the citation format "dkt. __ at __," the Court now uses "Filing No. __, at ECF p. __" as its citation format.

would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following factual background is drawn from the admissible evidence submitted by the parties that is either undisputed or viewed in the light most favorable to the non-movant, Ms. English.

Ms. English started working as an assembler at GE's Bloomington, Indiana, refrigerator manufacturing plant in 1985. [Filing No. 34-1, at ECF p. 3.] A rotator cuff injury in 2007 led Ms. English to be given a permanent medical restriction that forbids her from reaching above her shoulders with either arm. [Filing No. 37-2, at ECF p. 1.] After missing several months of work, Ms. English returned to GE, performing work that did not violate her restriction. [Filing No. 37-2, at ECF p. 1.] In 2009, she bid on a position as a repair operator on the B19 line (the "B19 job"). [Filing No. 37-2, at ECF p. 2.] It is GE's policy that open hourly positions such as this are generally awarded based on seniority. [Filing No. 34-3, at ECF p. 2.] Once a job has been awarded to an employee, GE's medical staff reviews the employee's medical file to determine whether any restrictions would prevent the employee from performing the essential functions of the new position. [Filing No. 34-3, at ECF p. 2.] If the medical staff determines that the employee is not medically qualified for the new position, they notify GE's Human Resources Department, which then notifies the employee. [Filing No. 34-3, at ECF p. 2-3.]

GE has a formal ADA reasonable accommodation process, which requires the establishment of an Accommodation Review Committee ("ARC"). [Filing No. 34-5, at ECF p. 39.] The ARC must identify the essential functions of the desired job, verify the employee's medical classification, consult with that employee, and identify possible accommodations. [Filing No. 34-5, at ECF p. 40-41.] Although Ms. English was initially awarded the vacant B19 job based on her seniority, GE's medical staff found that her shoulder restriction prevented her from performing all essential functions of the job. [Filing No. 34-3, at ECF p. 3.] This determination triggered GE's reasonable accommodation process for Ms. English and the establishment of an ARC. The ARC members may vary from case to case, but in Ms. English's case, the ARC included Jim Strasler, GE's Environmental Health and Safety Manager; Mike

Duregger, the Plant Manager; Toni Kristoff, an on-site nurse; Julia Karr, the Human Resources Administrator; Sharon Crane, a nurse practitioner; and Ruth Whitt, an ergonomic specialist. [Filing No. 34-4, at ECF p. 19-20; Filing No. 34-5, at ECF p. 13-14.] Ms. Whitt was tasked with determining whether a reasonable accommodation was available that would allow Ms. English to perform the essential functions of the B19 job. [Filing No. 34-5, at ECF p. 11-12.] In Ms. Whitt's opinion, a particular three-step stool could safely accommodate Ms. English's shoulder restriction. [Filing No. 37-6, at ECF p. 10.] Ms. English is familiar with the requirements of the B19 job because her stepmother had the job for thirty-eight years and Ms. English frequently visited her and saw her perform the job. [Filing No. 37-2, at ECF p. 3.] Based on that knowledge, Ms. English believes the stool would allow her to perform all the duties of the B19 job without violating her restriction. [Filing No. 34-1, at ECF p. 13.]

At a subsequent ARC meeting, the committee members in attendance agreed to schedule a demonstration that would allow Ms. English to demonstrate her ability to work on the B19 line with a three-step stool. [Filing No. 37-3, at ECF p. 2.] However, on the morning of the demonstration, it was cancelled. [Filing No. 34-1, at ECF p. 21.] While the details of the cancellation are not entirely clear, the decision to do so was apparently made by Mr. Strasler. [Filing No. 34-7, at ECF p. 6; Filing No. 37-3, at ECF p. 3.] Mr. Strasler, in consultation with other members of the committee, determined that additional stools on the B19 line would constitute a safety hazard; among other things, there was a concern that the width of the required stool would put it too close to the tracks of ball bearings and pin rollers and would block ingress and egress. [Filing No. 34-4, at ECF p. 25-26; Filing No. 34-7, at ECF p. 5.] Because GE determined there was no reasonable accommodation for Ms. English's restriction, the B19 job was awarded to another employee. [Filing No. 37-3, at ECF p. 3.]

# III.
## DISCUSSION

Ms. English brought this suit under the ADA, 42 U.S.C. § 12112, alleging that GE has discriminated against her on the basis of her disability by failing to make reasonable accommodations that would allow her to perform a position for which she is otherwise qualified. [Filing No. 1.] "The ADA requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (alterations in original) (quoting 42 U.S.C. § 12112(b)(5)(A)). A failure-to-accommodate claim requires the plaintiff to show that: "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011) (citation and quotation marks omitted). "[T]he ADA defines the term 'qualified individual' to mean 'an individual who, *with or without reasonable accommodation*, can perform the essential functions of the employment position that such individual holds or desires.'" *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013) (emphasis in original) (quoting 42 U.S.C. § 12111(8)). "After an employee has disclosed that she has a disability, the ADA requires an employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) (citation and quotation marks omitted).

The parties first dispute whether there was a breakdown in the interactive process mandated by the ADA, and if so, whether this precludes summary judgment. Ms. English argues

5

that there was a breakdown in the interactive process when GE cancelled the stool demonstration, which prevented Ms. English from demonstrating that she could perform the essential functions of the B19 job using the stool and thus resulted in GE's failure to identify it as a reasonable accommodation. [Filing No. 38, at ECF p. 17.] GE responds that regardless of whether it properly engage in the interactive process, Ms. English has not met her burden of demonstrating that a reasonable accommodation existed, which she must do to succeed on her claim. [Filing No. 34, at ECF p. 23.]

Second, the parties dispute whether Ms. English is a qualified individual—that is, whether Ms. English can meet the first element of her reasonable accommodation claim. According to GE, Ms. English cannot establish that she is a qualified individual because performing work above shoulder level is an essential function of the B19 position, and GE contends there is no accommodation that would safely allow her to perform this work. [Filing No. 34, at ECF p. 15-21.] Ms. English responds that there is enough evidence on the record for a reasonable jury to conclude that she could have performed the job with a reasonable accommodation and that the three-step stool was such an accommodation. [Filing No. 38, at ECF p. 10-13.] The Court will address each of the parties' arguments in turn.

A.  **Breakdown in the Interactive Process**

Once an employee requests an accommodation, the employer must engage in a flexible interactive process to identify a reasonable accommodation. *See Basden v. Prof'l Transp., Inc., 714 F.3d 1034, 1038 (7th Cir. 2013)* (citing *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). It is undisputed that Ms. English requested an accommodation. Ms. English argues that a breakdown in the interactive process occurred when GE cancelled the stool demonstration, thereby preventing her from demonstrating that she could perform the essential

functions of the B19 job. [Filing No. 38, at ECF p. 17.] However, GE argues that its ARC members engaged in the interactive process by trying to find an accommodation for Ms. English and therefore did not fail in its duty under the ADA. [Filing No. 34, at ECF p. 22.]

GE argues further that even assuming the cancellation of the demonstration constituted a failure to engage in the interactive process, that failure is not an independent basis for liability. [Filing No. 34, at ECF p. 22 (citing *Basden*, 714 F.3d at 1039).] If no reasonable accommodation ultimately exists, says GE, any failure on its part to adequately engage in the interactive process cannot form a basis for liability under the ADA, and Ms. English has not presented sufficient evidence that one exists to preclude summary judgment on that question. [Filing No. 34, at ECF p. 22-23.]

Ms. English takes issue with GE's focus on the stool to argue that no reasonable accommodation existed, as the stool was the only option ever discussed. [Filing No. 38, at ECF p. 14.] She points out that while it was the only accommodation she requested, she was relying on Ms. Whitt's belief that the stool could indeed accommodate her. [Filing No. 38, at ECF p. 15.] When GE cancelled the demonstration, argues Ms. English, this breakdown in the interactive process prevented her from disputing GE's decision or identifying another possible accommodation. [Filing No. 38, at ECF p. 15.]

"[W]hile an employer's failure to engage in the interactive process alone is not an independent basis for liability, it is actionable 'if it prevents identification of an appropriate accommodation for a qualified individual.'" *Spurling*, 739 F.3d at 1062 (quoting *Basden*, 714 F.3d at 1039). Therefore, for Ms. English to proceed with her claim, she "must show that a reasonable accommodation could be made that would enable her to carry out the essential functions of her job." *Id.* As it turns out then, both arguments raised turn on a resolution of

7

whether there is a genuine issue that a reasonable accommodation would have been available to Ms. English. If there is, then GE's cancellation of the demonstration may well be considered by a reasonable jury to be an actionable failure to engage in the interactive process.

### B. Failure to Accommodate

GE argues that Ms. English's ADA claim fails as a matter of law because she cannot establish that she is a qualified individual within the meaning of the ADA. As stated above, a qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). GE contends that summary judgment is warranted because it could not reasonably accommodate Ms. English's disability, and therefore the "qualified individual" element of her claim is not met. [Filing No. 34, at ECF p. 15.]

According to GE, Ms. English cannot establish that she is a qualified individual with a disability because performing work above shoulder level is an essential function of the B19 position, and GE cannot safely accommodate Ms. English in a manner that would allow her to perform work above shoulder level. [Filing No. 34, at ECF p. 15-21.] GE argues that the recommended three-step step stool would create a safety hazard, and it still would not eliminate the need for Ms. English to work above shoulder level. [Filing No. 34, at ECF p. 16-19.] Ms. English, on the other hand, argues that there is evidence that the three-step stool—or perhaps other measures—could safely serve as a reasonable accommodation. [Filing No. 38, at ECF p. 17-23.]

GE points to evidence that it believes is sufficient to prove that Ms. English's disability could not be accommodated. [Filing No. 34, at ECF p. 17-19.] This evidence includes the professional opinions of Mr. Strasler, Ms. Pace, and Mr. Duregger. [Filing No. 34, at ECF p. 17-

19.] These opinions were echoed by a workplace ergonomics consulting firm (hired after the fact) that "completed an independent review of whether an employee with an above shoulder reaching restriction could be accommodation in the B19 [job]."[2] [Filing No. 34, at ECF p. 19-20 (citing Filing No. 34-11).] The consulting firm analyzed five possible accommodations and concluded that none would completely eliminate "excessive shoulder flexion greater than 90 [degrees]" while repairing the inside of a refrigerator. [Filing No. 37-9, at ECF p. 6.]

Ms. English points to her own deposition testimony and that of Ms. Whitt in support of her claim that the three-step stool would have allowed her to perform the duties of the B19 job. [Filing No. 38, at ECF p. 17-21.] First, Ms. Whitt—GE's own ergonomic technician—unequivocally testified at her deposition that a three-step stool could serve as a reasonable accommodation for Ms. English's shoulder restriction. [Filing No. 37-6, at ECF p. 10 ("I let medical know that I had located a three-step stool that would accommodate [Ms. English].").] When asked whether, "[w]hen [she] recommended the three-step stool, [she] believe[d] that Ms. English would work safely with that stool," she replied, "[w]ith workspace modification, yes." [Filing No. 37-6, at ECF p. 17.] Second, Ms. English testified that, based on her personal knowledge of the essential functions of the B19 job, she could have performed the job had GE provided her the three-step stool. [Filing No. 34-1, at ECF p. 12-13.]

Ms. Whitt's and Ms. English's testimony are sufficient to create a genuine issue of material fact regarding whether a reasonable accommodation existed that would allow Ms.

---

[2] GE submitted the consulting firm's findings as an expert report. [Filing No. 34-11.] Ms. English contends that the Court should not consider GE's expert report because (1) it was not submitted in a timely manner in accordance with the Parties' Case Management Plan, and (2) the version submitted to the Court is not the same as the version submitted to Ms. English. [Filing No. 38, at ECF p. 23-24.] The Court need not decide whether the expert report should be excluded because, in the end, even if the Court considers the report, it at most creates a factual dispute regarding whether a reasonable accommodation existed.

English to perform the essential functions of the B19 job. GE acknowledges that Ms. English's testimony "support[s] [her] claim," [Filing No. 34, at ECF p. 20], but attempts to undermine it, describing it as "self-serving," and "pure speculation" that is "not enough to sustain her claims past summary judgment," [Filing No. 34, at ECF p. 20-21]. But this argument entirely ignores and directly contradicts what the Seventh Circuit has "repeatedly emphasized over the past decade"—namely, that "the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (citing *Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013); *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010); *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009); *Paz v. Wauconda Healthcare & Rehabilitation Centre, LLC*, 464 F.3d 659, 664-65 (7th Cir. 2006); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004)); *see Navejar*, 718 F.3d at 697 ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'") (citation and quotation marks omitted). Ms. English described the essential functions of the B19 job based on her personal knowledge and stated that she could perform them with the stool accommodation. Contrary to GE's position, the Court is required to consider this evidence at the summary judgment stage. *See Hill*, 724 F.3d at 967-68 ("[The plaintiff] described the three encounters in his deposition based on his personal knowledge and set forth specific facts and the district court should have considered his statements as evidence.").

Ms. English's testimony may be self-serving, but only because "[d]eposition testimony affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Id.* at 967 (citing *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003)). In this sense,

Ms. English's testimony is no more self-serving than any of the depositions and affidavits from GE's own employees. More importantly, Ms. English's testimony does not stand alone, as Ms. Whitt's testimony is independent evidence that a reasonable accommodation exists that would allow Ms. English to perform the essential functions of the B19 job.

On its part, GE has an extensive arsenal of evidence supporting its position. Multiple witnesses with professional experience in occupational health and safety have testified that a three-step stool accommodation would not be feasible for various reasons. One of those reasons is that even though the stool would allow Ms. English to reach the top of a refrigerator, there are many other essential job functions that allegedly could not be accommodated with the stool. [*See, e.g.*, [Filing No. 34-4, at ECF p. 26](#).] Moreover, Ms. English would be required from time to time to make repairs to water filters and other parts in the inside back corners of the refrigerator. [[Filing No. 34-4, at ECF p. 11-12](#).] According to Ms. Pace and others, if a stool elevated Ms. English high enough to keep her from violating her shoulder restriction, the top of the refrigerator would block her view of the interior elements. [[Filing No. 34-4, at ECF p. 26](#).] But based on Ms. English's familiarity with B19 job, she disagrees with this assessment. [[Filing No. 34-1, at ECF p. 14-15](#).] And GE's own Ms. Whitt agrees with her. Which side has the better case is for a jury, not the Court at the summary judgment stage, to resolve.

Because there is a genuine issue of material fact regarding whether Ms. English is a qualified individual under the ADA—the only element of Ms. English's claim that GE disputes—the Court must deny GE's Motion for Summary Judgment. In denying summary judgment, however, the Court wishes to additionally highlight that there is at least a fact question regarding whether GE's cancellation of the scheduled stool demonstration constitutes an improper termination of the interactive process mandated by the ADA. It is undisputed that Ms.

English requested an accommodation. And "[o]nce an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." 29 C.F.R. app. § 1630.9. The scheduled demonstration could have definitively shown that GE could not safely accommodate Ms. English's disability, or it might have proven to GE that it could indeed provide Ms. English an accommodation. But unfortunately, GE chose not to go through with the demonstration, and this litigation ensued. GE now asks the Court to enter summary judgment in its favor, but there is conflicting evidence regarding whether a reasonable accommodation exists, at least in part due to GE's decision to cancel the stool demonstration. Because of the conflicting evidence, a jury must decide whether a reasonable accommodation exists.

## IV.
### CONCLUSION

For the reasons stated, the Court **DENIES** GE's Motion for Summary Judgment. [Filing No. 33.]

**Distribution via ECF only to:**

All counsel of record.